CURTISS-WRIGHT CORPORATION, A DELAWARE CORPO-
RATION, PLAINTIFF-RESPONDENT, v. PASSAIC VAL-
LEY WATER COMMISSION, A PUBLIC CORPORATION
OF THE STATE OF NEW JERSEY, DEFENDANT-AP-
PELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 4, 1965—Decided October 15, 1965.

Before Judges GAULKIN, LABRECQUE and BROWN.

Mr. *Newton M. Roemer* argued the cause for defendant (*Mr. Benjamin J. Spitz*, attorney).

*Mr. Alfred J. Kovell* argued the cause for plaintiff.

The opinion of the court was delivered by

GAULKIN, S. J. A. D. Defendant appeals from a summary judgment in favor of plaintiff which adjudged that the rate which defendant charged plaintiff for water exceeded that permitted by a contract between the parties. The opinion of the trial court is reported in 84 *N. J. Super.* 197 (*Ch. Div.* 1964).

The solution of this dispute hinges upon construction of the contract. It was entered into by defendant and Defense Plant Corporation (hereafter DPC), an agency of the United States

government, plaintiff's predecessor in interest. It was dated December 26, 1942 and contained no time limit. The pertinent portions of the contract are these:

"WHEREAS, the Commission did construct and agrees to maintain a pipe line and to supply water to the Corporation's new plant in the Borough of Wood-Ridge * * *, which plant is to be occupied by Wright Aeronautical Corporation as lessee, the cost of the construction of said pipe line to be borne by the Corporation, and

WHEREAS, the Commission is organized and exists under the provisions of the Revised Statutes of New Jersey, 1937, Title 40:62–108 et fols., and

WHEREAS, the municipalities of Paterson, Passaic and Clifton acting under said Statute and through the Commission, acquired and own the water works from which the water will be supplied, which water works are operated by the Commission acting for said municipalities, and

WHEREAS, it is provided in Section 127 of the said Statute as follows: '40:62–127. Water rates and regulations

Such commission may prescribe and change from time to time rates to be charged for water supplied by the waterworks so acquired, and by any extension or enlargement thereof, but rates for the same kind or class of service shall be uniform in all the municipalities supplied by the waterworks. As soon as practicable after acquiring the waterworks rates shall be prescribed, and shall be revised from time to time whenever necessary, so that the waterworks shall be self-supporting, the earnings to be sufficient to provide for all expenses of operation and maintenance and such charges as interest, sinking fund and amortization, so as to prevent any deficit to be paid by taxation from accruing.'—

WHEREAS, the Corporation is desirous of having this agreement executed by the Commission to supply water not only to Wright Aeronautical Corporation but also to any subsequent owner or operator of the said plant at Wood-Ridge, New Jersey, *at rates fixed by the Commission in accordance with the said Statute.*

Now THEREFORE, this agreement witnesseth, that the said Commission, in consideration of the premises, agrees that it will supply water not only to Wright Aeronautical Corporation, but also to any subsequent owner or operator of the plant *at the above location at its published scale of rates for industrial consumers as may be fixed from time to time by the Commission in accordance with the provisions of the Statute above quoted.*" (Emphasis added)

It is agreed that Wood-Ridge is not a municipality "supplied by the waterworks" within the meaning of said Section 127. It is also agreed that defendant supplies a number of

industrial consumers outside of the three owning municipalities.

In 1942 and until July 1, 1960 defendant had a single rate schedule for consumers within or without Paterson, Passaic and Clifton. In July 1960 defendant established separate classifications for users within and without the owning municipalities, with a higher rate to be charged thereafter to the latter. On January 5, 1961 *R. S.* 40:62–127, referred to in the contract, was amended by *L.* 1960, *c.* 172, by inserting therein the following words:

> "The supplying of water to locations beyond the boundaries of the municipalities owning the waterworks shall be basis for separate classification of service to permit reasonable differentiation of rates."

The following statement prefaced the bill:

> "The purpose of this bill is simply to clarify the law permitting a commission to charge somewhat higher rates to consumers outside the owner municipalities in cases where the investment or tax liability of owner municipalities or other factors make such a differential reasonable in the circumstances.'

Plaintiff concedes that defendant has the right under the contract to make any reasonable classification of users for rate purposes and to make reasonable changes in the classifications and rates from time to time. Whether it was legal or reasonable before the adoption of *L.* 1960, *c.* 172, to make a separate classification based upon location within or without the owning municipalities was not decided by the trial court and is not before us, hence we express no opinion upon it. Plaintiff concedes (without conceding its validity) that *L.* 1960, *c.* 172, makes such difference in location a proper basis for different rate classification. However, plaintiff argues that whether the classifications made since July 1, 1960 are legal or reasonable is beside the point because the contract bound defendant to give plaintiff the same rate given industrial consumers within the owning municipalities for all time.

We disagree with plaintiff's argument. There is nothing in the contract which prevents defendant from making reason-

able classifications for rate purposes and, assuming the classification here made was reasonable, there is nothing in it which guarantees to plaintiff forever the rate granted to users within the owning municipalities.

■ The contract does not expressly provide for the guarantee which plaintiff claims. In fact, it recites (quoting the statute) that defendant "may prescribe and change from time to time rates to be charged," which "shall be revised * * * whenever necessary, so that the waterworks shall be self-supporting * * * so as to prevent any deficit to be paid by taxation from accruing * * *." It states that DPC is desirous of assuring a supply of water "to any subsequent owner or operator of the said plant at Wood-Ridge * * * at rates fixed * * * *in accordance with the statute,"* and the covenanting clause itself says only that defendant will supply water "at its published scale of rates for industrial consumers as may be fixed from time to time * * * *in accordance with the provisions of the Statute above quoted."* We hold that this includes amendments to said statute.

Plaintiff argues that this case is on all fours with *Federal Shipbuilding & Drydock Co. v. Bayonne,* 102 *N. J. Eq.* 475 (*Ch.* 1928), affirmed o.b., 104 *N. J. Eq.* 196 (*E. & A.* 1929), and should be controlled by it. However, in that case the contract provided that Bayonne was to supply water to Federal "at the minimum market rate paid by any consumer of an equal quantity of water" (102 *N. J. Eq.*, at *p.* 478). The contract here contains no equivalent provision.

■ Nor can the construction contended for by plaintiff be implied from the words of the contract or the circumstances which surrounded its execution. It is argued that DPC would not have paid for the construction of the line if it had not been guaranteed parity with users within the owning municipalities. The short answer to this is that there is no proof that DPC bargained for this. Plaintiff argues that we must assume DPC did so, as a matter of common sense. On the contrary, we take judicial notice that it is quite usual for property owners requiring the extension of utilities to pay for the

extension with no guarantee other than the assurance of continued service at reasonable rates and without unreasonable discrimination. Indeed, the evidence submitted by plaintiff to the trial court indicates that this was all that DPC did bargain for.

Plaintiff submitted a memorandum, prepared June 27, 1942 by an agent of DPC, reporting upon a meeting held June 19, 1942 attended by representatives of DPC and defendant. The memorandum contained this paragraph which we deem illuminating:

"It was finally decided that the Army was willing to have this cost of approximately $45,000 paid for out of Defense Plant Corporation funds * * *. This being a non-recoverable item, an agreement was requested by the Army between Passaic Valley Water Commission and Wright Aeronautical Corporation acting for and on behalf of Defense Plant Corporation *which would guarantee the maintenance and availability of water supply facilities to the plant site so long as the plant remained in operation. This was agreed to by Mr. Bonyun of the Water Commission.*" (Emphasis added)

There is not a word in this memorandum to indicate that rates were ever discussed. On the contrary, it shows that DPC was interested in the permanence of service, not in preferential rate treatment. The contract itself indicates that that was its purpose. It states:

"WHEREAS, the Corporation is desirous of having this agreement executed by the Commission to supply water not only to Wright Aeronautical Corporation but also to any subsequent owner or operator of the said plant at Wood-Ridge, New Jersey, at rates fixed by the Commission in accordance with the said Statute * * *."

We note in passing that the contract in question recites that it is a "Supplemental Agreement." It supplemented the separate written agreement of DPC to pay for the installation. But, although both agreements are dated December 26, 1942, it appears that the construction was already completed when the supplemental agreement was entered into, for it recites that "the Commission *did construct* and agrees to maintain a pipe line and to supply water * * *."

■ Defendant contends that even if the supplemental agreement contained an express guarantee as to rates such as plaintiff claims, it would nevertheless be subject to the State's reserved power to amend the statute. Since we have held there was no such guarantee, express or implied, we need not express any opinion upon defendant's position. It is true, however, that if we had any doubt about the construction of the contract the doubt would have to be resolved in favor of defendant, for a contract of a municipal corporation will not be construed to waive or surrender the right of the corporation to act with freedom with reference to its revenues unless the intention (as well as the power) to do so clearly appears.

Plaintiff argues that *section* 139 of the statute, *R. S.* 40:62–139, gave defendant the power to give a buyer of its water permanent preferential treatment, and that we must assume the supplemental agreement was entered into with the intention of exercising that power. Assuming *section* 139 did give defendant that power, we find no evidence — much less the clear evidence that is required—that defendant intended to renounce its freedom to act in the future. The contract itself makes no reference to *section* 139.

The summary judgment is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.